# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 12-CV-1410 (JFB)(AKT)

ANN MARIE SCHIFF,

Plaintiff,

VERSUS

SUFFOLK COUNTY POLICE DEPARTMENT, ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
April 20, 2015

JOSEPH F. BIANCO, District Judge:

Ann Marie Schiff ("plaintiff") brings this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 ("Section 1983")[1] against: the Suffolk County Police Department ("SCPD"), SCPD Officers Luigi Modica and Michael Caponi in their official and individual capacities, and the County of Suffolk (collectively, the "defendants"). Plaintiff alleges injuries caused by defendants' illegal search of her property, use

---

[1] Since the inception of the suit, plaintiff has claimed that "[t]he jurisdiction of this court is invoked pursuant to including but not limited to The United States Constitution, U.S.C. Section 1983, U.S.C. Section 1986, and U.S.C. 1988." (Complaint ¶ 6, First Amended Complaint ¶ 6, Second Amended Complaint ("SAC") ¶ 6, Proposed Third Amended Complaint ("TAC") ¶ 6.) In her original and subsequent pleadings, however, plaintiff does not specify what causes of action she brings against any particular defendant. Furthermore, liability under 42 U.S.C. § 1986 requires liability to be established under 42 U.S.C. § 1985 (which the plaintiff does not plead) as a necessary predicate, *see, e.g., Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000); were the Court to consider plaintiff to be attempting to assert a cause of action for conspiracy under 42 U.S.C. § 1985, plaintiff's allegations are too vague and without basis in fact to satisfy its heightened pleading requirements. *See Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States."); *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) (as to a § 1985 claim, "a complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss"). Furthermore, 42 U.S.C. § 1988 does not itself provide a private cause of action for the violation of civil rights, instead being "intended to complement the various acts which do create federal causes of action for the violation of federal civil rights." *Moor v. Alameda Cnty.*, 411 U.S. 693, 702 (1973). Finally, plaintiff's original notice of claim and civil cover sheet (ECF No. 1) specify that this suit was brought pursuant to Section 1983, despite the assertion of other purported jurisdictional grounds. The Court, therefore, shall treat this suit as bringing claims under Section 1983 alone.

of excessive force, false arrest and imprisonment, denial of medical care, and malicious prosecution arising from an incident on March 19, 2011 when Modica and Caponi allegedly responded to a 911 call at plaintiff's home, resulting in plaintiff's arrest and prosecution in New York state court for harassment, obstructing governmental administration, and resisting arrest.

Plaintiff presently moves to amend her complaint for a third time, pursuant to Federal Rule of Civil Procedure 15(a)(2). Plaintiff's proposed third amended complaint ("TAC") contains a number of new allegations, all of which seemingly occurred after plaintiff filed the second amended complaint ("SAC") on April 4, 2013, and which relate to plaintiff's meetings with attorneys and psychological evaluations for her state criminal case, culminating in her alleged detention by Suffolk County for several days after a court appearance on July 3, 2013. Plaintiff also seeks to add a host of new defendants to this action: the Suffolk County District Attorney's Office ("SCDA"); Thomas J. Spota, Suffolk County District Attorney; William A. DeVore, Deputy Bureau Chief of the District Court Bureau of the SCDA; and Assistant District Attorneys Jane Does and John Does (together with the SCDA, Spota, and Devore, the "SCDA defendants"); the Legal Aid Society of Suffolk County ("Legal Aid"); Director of Legal Aid John/Jane Doe; Attorneys for Legal Aid Jeremy Mis and Adam Doe (together with Legal Aid and John/Jane Doe, the "Legal Aid defendants"); the Office of the Commissioner of Mental Hygiene of Suffolk County ("CMHSC"); James L. Tomarken, Commissioner of Mental Hygiene; Brentwood Mental Health Center ("BMHC"); Paris Arianas, M.D.; Louis Gallagher, Ph.D. (together with the CMHSC, Tomarken, the BMHC, and Arianas, the "CMHSC defendants"); Vincent F. DeMarco, Sheriff of Suffolk County; John P. Myerricks, Undersheriff; Joseph T. Caracappa, Undersheriff; Kerry M. Kneital, Chief Deputy Sheriff (together with Demarco, Myerricks, and Caracappa, the "Sheriff defendants"); the Suffolk County Correctional Facility ("SCCF"); Vincent Geraci, D.O., Medical Director of the SCCF; Dr. John Doe, Psychiatric Director of the SCCF; Medical and Nursing Staff John and Jane Does; EMTs John and Jane Does; Sergeant 182; and Commanding Officers John and Jane Does (together with the SCCF, Geraci, Medical and Nursing Staff John and Jane Does, EMTs John and Jane Does, and Sergeant 182, the "SCCF defendants").

Defendants oppose the motion to amend, arguing that the motion should be denied because it is futile for several reasons: (a) the TAC fails to plausibly allege conduct by any of the proposed additional defendants which deprived plaintiff of a right guaranteed under the Constitution; (b) the SCDA, the SCCF, the CMHSC, and the BMHC are all administrative arms of the County of Suffolk and, therefore, cannot be sued; (c) there are no allegations of personal involvement in any constitutional violations by proposed defendants Spota, DeVore, DeMarco, Myerricks, Caracappa, Kneital, Ewald, Sharkey, Geraci, Dr. John Doe, Psychiatric Director of the SCCF, Tomarken, and the Director of the LASSC John/Jane Doe; (d) the remaining SCDA defendants have absolute prosecutorial immunity; (e) the Legal Aid defendants are not state actors and, therefore, cannot be liable under Section 1983; and (f) plaintiff fails to plead compliance with the Prison Litigation Reform Act ("PLRA") and, therefore, no suit may be brought against the Sheriff defendants and the SCCF defendants.

For the following reasons, the Court grants plaintiff's motion to amend her complaint to: (a) add a claim against Dr. John

2

Doe, Psychiatric Director of the SCCF, Medical and Nursing Staff John and Jane Does, EMTs John and Jane Does, Sergeant 182, and Commanding Officers John and Jane Does in connection with her claims for false arrest and denial of medical care from July 3, 2013 through July 11, 2013; and (b) to add the names of heretofore unknown individuals plaintiff alleges were involved in using excessive force and denying her medical care while at the SCPD Fourth Precinct on or about March 19, 2011. The Court denies the motion in all other respects.

## I. BACKGROUND

### A. Factual Allegations

The Court summarizes the following relevant facts taken from the proposed TAC for the purposes of this opinion. These are not findings of fact by the Court; instead, the Court assumes these facts to be true for purposes of deciding the pending motion.

#### 1. The March 19, 2011 Incident

Plaintiff alleges that Caponi and Modica responded to a 911 call made by plaintiff from her home on or about March 19, 2011. (TAC ¶ 8.) Plaintiff alleges that Caponi and Modica at that time "illegally entered the above mentioned premises without probable cause, inappropriately touched plaintiff, illegally searched and seized, harassed, used excessive and unnecessary force, assaulted, battered and kidnapped plaintiff" in violation of her "constitutional and statutory rights."[2] (*Id.* ¶ 9.) Plaintiff was apparently arrested, and she alleges that subsequently Caponi and Modica "assaulted and battered plaintiff on numerous occasions" at the police station and "falsified sworn official police documents." (*Id.* ¶¶ 10-11.) Plaintiff alleges that Caponi, Modica, and unnamed other Suffolk County employees at the Fourth Precinct[3] then assaulted, battered, and denied plaintiff access to necessary medical care during and after her transfer to another precinct. (*Id.* ¶¶ 12-13.)[4]

#### 2. Subsequent Alleged Constitutional Violations

Plaintiff now seeks to add a number of allegations in her TAC concerning subsequent events. Plaintiff first alleges that the SCDA defendants maliciously prosecuted her for 27 months from the time of her allegedly false arrest on March 19, 2011, through a court appearance on July 3, 2013, at which she was arrested and detained. (*Id.* ¶ 15.) Plaintiff alleges that the SCDA defendants withheld documents during her criminal case, including records of the 911 calls she made on March 19, 2011, in order to protect Modica and Caponi. (*Id.*) Plaintiff alleges that at some point her unnamed "private attorney" asked the state court to relieve him of his representation because of the SCDA defendants' "stonewalling," though he apparently also at some point asked plaintiff to drop this lawsuit. (*Id.*)

Plaintiff alleges that on May 16, 2013, she went to the BMHC for a court-ordered psychiatric examination by defendants

---

[2] Plaintiff does not provide any facts or context as to why she made a 911 call, why the police allegedly entered her home, what they did while inside her home, or why she was removed (other than the conclusory statements regarding constitutional violations).

[3] In letters to the Court filed on February 17, 2015 (ECF No. 60) and March 6, 2015 (ECF No. 62), plaintiff states that she wishes to supplement her motion to amend by specifying that the employees of the SCPD Fourth Precinct involved were "Lena Mercer, PDA #125/400, Jane Doe, PDA #145 and thirdly Jane Doe, PDA . . . as well as Desk Sargent [sic] Veronko and perhaps another Desk Sargent Doe." Plaintiff's letters to the Court after her motion was fully briefed will be considered as a supplement for the purposes of naming the previously unknown defendants alleged in paragraph 13 of the SAC/TAC.

[4] The facts summarized until this point parallel the entirety of the facts alleged in plaintiff's SAC.

3

Gallagher and Arianas. (*Id.* ¶ 18.) Plaintiff alleges Arianas wrote in his report, which was provided to plaintiff at her next court appearance on May 30, 2013, that she was an "incapacitated person" who could not assist in her own defense. (*Id.*) Plaintiff alleges that the psychiatric examination was "rigged" against her, that she was cooperative with Gallagher and Arianas except with respect to answering questions relating to her criminal case or matters unrelated to her capacity, and that Gallagher and Arianas bullied and threatened her. (*Id.* ¶ 19.)

Plaintiff alleges that the defendant Mis of Legal Aid was appointed to represent her on May 30, 2013. (*Id.* ¶ 20.) At her next criminal hearing on June 20, 2013, plaintiff alleges that she argued with Mis and Legal Aid defendant Doe about whether or not she would go for another psychiatric evaluation. (*Id.*) Plaintiff, while admitting that she was under outpatient psychiatric care for the alleged "trauma" caused by Caponi and Modica and the subsequent prosecution, alleges that she did not want to undergo another psychiatric evaluation even though she disagreed with its conclusions. (*Id.*) Plaintiff also alleges that she urged Mis to listen to the recording she had made of her examination by Gallagher and Arianas, which he refused. (*Id.*) Plaintiff states that she believed Mis and Doe were attempting to have the charges dropped but "still prevent the truth from coming out." (*Id.*)

Finally, at her July 3, 2013 criminal court appearance, plaintiff alleges that Mis informed her the judge was going to remand her into custody, and then they had a verbal confrontation over whether or not plaintiff had been tape recording her psychiatric examination and her meetings with Mis. (*Id.*). During the hearing, plaintiff alleges both Mis and the judge "rant[ed]" at her on the record that she was incapacitated, and the judge then ordered her to be arrested, allegedly embarrassing and defaming her. (*Id.*)[5] Plaintiff alleges she was held at the SCCF for eight days by the Sheriff defendants "without any food or water or medication," subjected to an "unsafe and traumatic situation" as a mentally incapacitated person through contact with other inmates, and ignored by the CMHSC defendants with respect to her mental health. (*Id.* ¶ 21.) Plaintiff makes various allegations against the Sheriff defendants, including that they denied her a phone call, made verbal threats against her, and failed to provide her necessary medical care, including giving her prescribed medication, until she was transferred to Pilgrim Psychiatric Facility ("Pilgrim") on July 11, 2013. (*Id.* ¶¶ 21-22.) Plaintiff alleges she was moved to Pilgrim after meeting with a "visitor" psychiatrist and a nurse-practitioner at the SCCF, but that during her time at the SCCF, no one from the CMHSC defendants or the SCCF defendants administered medical care or visited plaintiff. (*Id.* ¶¶ 22-25.) Plaintiff alleges she signed voluntary commitment forms into Pilgrim on July 11, 2013; she alleges she was not released from Pilgrim until July 19, 2013, after meeting with psychiatrists and an attorney for "in-patients" at the facility. (*Id.* ¶ 25.) Plaintiff alleges these events were caused by misconduct and abuse of authority

---

[5] As defendants noted in a submission to Magistrate Judge Tomlinson (*see* ECF No. 33), the charges against plaintiff stemming from the March 19, 2011 for harassment, obstructing governmental administration, and resisting arrest were dismissed at the July 3, 2013 hearing, because of plaintiff's status as an "incapacitated person" under N.Y. Crim. Proc. L. § 730, who as a result of mental disease or defect lacked the capacity to understand the proceedings against her or to assist in her own defense. Plaintiff does not clearly allege why she was remanded into the custody of the Sheriff defendants and the SCCF after the July 3, 2013 hearing.

by the defendants, and caused her various constitutional injuries. (*Id.* ¶ 28.)

B. Procedural Background

Plaintiff commenced this action on March 15, 2012. Plaintiff filed her first amended complaint on June 29, 2012. Defendants answered the amended complaint on July 27, 2012. Plaintiff filed her SAC on April 4, 2013. Defendants answered the SAC on May 3, 2013. Plaintiff moved to file the TAC on October 9, 2014. Defendants filed their opposition on October 30, 2014, and plaintiff filed a reply in support of her motion on November 12, 2014. The matter is fully submitted.

II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 applies to motions to amend the pleadings. "The court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a); a motion to amend should be denied "only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party." *Crippen v. Town of Hempstead*, No. 07-CV-3478 (JFB)(ARL), 2013 WL 2322874, at *1 (E.D.N.Y. May 22, 2013); *see Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 125 (2d Cir. 2008) (per curiam) ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.").

"Amendment is futile when the proposed amended complaint could not withstand a motion to dismiss, such as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6)." *Doe I v. Four Bros. Pizza, Inc.*, No. 13-CV-1505 (VB), 2013 WL 6083414, at *2 (S.D.N.Y. Nov. 19, 2013); *see Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany*, 615 F.3d 97, 99 (2d Cir. 2010) (holding that amendment would be futile because proposed amended complaint did not provide basis for subject matter jurisdiction); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002))).

"An amendment to add parties to a suit is further subject to Rule 21 of the Federal Rules of Civil Procedure, which permits their addition by order of the court 'at any time, on just terms.'" *Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012). "Here, because an answer has been filed, the showing necessary under Rule 21 is the same as that required under Rule 15(a)." *Id.*; *see, e.g.*, *Ingenito v. Riri USA, Inc.*, No. 11-CV-2569 (MKB), 2013 WL 752201, at *3 (E.D.N.Y. Feb. 27, 2013); *Calabro v. Stone*, 03-CV-4522 (CBA)(MDG), 2005 WL 327547, at *1 (E.D.N.Y. Jan. 27, 2005), *report & recommendation adopted*, 2005 WL 563117 (E.D.N.Y. Feb. 25, 2005).

III. DISCUSSION

Defendants argue that the plaintiff's motion to amend should be denied because the additional aspects of her proposed TAC are futile on several grounds. The Court addresses each argument in turn.

A. Failure to Allege Violative Conduct

Defendants first contend that plaintiff's motion is futile because none of the additional allegations contained in the TAC support a claim under Section 1983.

5

Defendants note that, in examining the TAC, "one finds mostly conclusions and the facts that are presented are insufficient for the Court to even liberally construe a deprivation of the plaintiff's constitutional rights by any of the proposed new defendants." (Defs. Mem. in Opp. ("Opp."), ECF No. 46, at 4.) In plaintiff's reply, she argues that the TAC alleges (albeit in general, conclusory terms) that defendants violated her Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (Pl. Reply Mem. ("Reply"), ECF No. 47, at 5-8.)[6]

In order to state a claim under Section 1983, "a plaintiff must allege (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Dwyer v. Regan*, 777 F.2d 825, 828 (2d Cir. 1985). Thus, Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'" *Hooda v. Brookhaven Nat'l Lab.*, 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982)). Accordingly, "a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted).

However, the Second Circuit emphasized in *Sealed Plaintiff v. Sealed Defendant* that "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally. . . . This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings. . . . This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated. . . . Accordingly, the dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." 537 F.3d 185, 191 (2d Cir. 2008) (citations and internal quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se*, the court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s].'" (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (alterations in original)).

Here, though plaintiff's prolix proposed TAC does not specify what claims in particular she brings against any of the proposed defendants, the Court—in construing her allegations in the most favorable light—interprets the new allegations in the TAC to bring new causes of action under Section 1983 for her arrest on July 3, 2013 and an alleged denial of medical care accompanying that detention.[7] The claims are brought against Dr. John Doe, Psychiatric Director of the SCCF, Medical and Nursing Staff John and Jane Does, EMTs John and Jane Does, Sergeant 182, and Commanding Officers John and Jane Does.

---

[6] Plaintiff also states that defendants "erroneously claims [sic] that plaintiff brings all of her claims under Section 1983," citing to the portion of her pleadings discussed *supra* note 1 where she states that "[t]he jurisdiction of this court is invoked pursuant to including but not limited to The United States Constitution, U.S.C. Section 1983, U.S.C. Section 1986, and U.S.C. 1988." (Reply at 5.) As discussed above, plaintiff's reference to statutes other than Section 1983 is inapposite—that failing, however, does not affect the analysis here, as plaintiff may still bring valid claims under Section 1983.

[7] Because defendants only make this argument in broad strokes about the proposed TAC as a whole, the Court does not examine each of plaintiff's allegations individually to determine whether or not it there is support for a particular claim against a particular defendant. As discussed below, there are other reasons as to why plaintiff's motion to amend her complaint must, for the most part, be denied as futile.

Therefore, the Court disagrees with defendants on this issue that plaintiff's motion to amend is futile, because, liberally construed, the proposed TAC does sufficiently allege conduct that could plausibly have deprived plaintiff of a constitutional right.

B. <u>Administrative Arms</u>

The Court next turns to the defendants' argument that plaintiff's motion to amend should be denied because the SCDA, the SCCF, the CMHSC, and the BMHC are all administrative arms of the County of Suffolk and, therefore, cannot be sued.

Defendants are correct that administrative arms of a municipality cannot be properly sued under Section 1983, as the municipality itself is the only proper defendant. *See, e.g.*, *Caidor v. M & T Bank*, No. 05-CV-297, 2006 WL 839547, at *2 (N.D.N.Y. Mar. 27, 2006) ("'Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002))); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claim against Lynbrook Police Department because "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued"). The Court notes that, in this case, the SCCF, the CMHSC, and the BMHC are all administrative arms of Suffolk County, which is already a defendant in this case. The SCDA, though not an administrative arm of the County, is similarly not an entity capable of being sued because a district attorney's office acts as a quasi-judicial state actor when making a decision to prosecute, and is therefore immune from Section 1983 liability under the Eleventh Amendment. *Barreto v. Cnty. of Suffolk*, 455 F. Appx. 74, 76 (2d Cir. 2012) (the Suffolk County District Attorney's Office is "not an entity capable of being sued") (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 535-36 (2d Cir. 1993)); *Feerick v. Sudolnik*, 816 F. Supp. 879, 887 (S.D.N.Y.) ("When the [district attorney's office] makes [prosecution-related] decisions, it is acting in a quasi-judicial capacity and thus is representing the state, not the county. Thus, the 11th Amendment protects the DAO from Section 1983 liability while it acts as a state representative."), *aff'd*, 2 F.3d 403 (2d Cir. 1993). Therefore, the Court agrees that none of these entities are proper defendants on any of plaintiff's Section 1983 claims, and the motion to amend is denied with respect to these defendants.

C. <u>Failure to Allege Personal Involvement</u>

The Court next addresses defendants' argument that plaintiff's motion to amend to add Spota, DeVore, DeMarco, Myerricks, Caracappa, Kneital, Ewald, Sharkey, Geraci, Dr. John Doe, Psychiatric Director of the SCCF, Tomarken, and Legal Aid Director John/Jane Doe is futile because plaintiff does not allege any personal involvement by these individuals in any constitutional violations.

In addition to satisfying the requirements under *Dwyer*, to prevail on a claim under Section 1983 against a given defendant, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004); *see Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal involvement by [a defendant] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under

section 1983."). As a prerequisite to a damage award under Section 1983, a plaintiff must allege each defendant's direct or personal involvement in the alleged constitutional deprivation, or that she or he had actual or constructive notice of the deprivation. *Anderson v. Bampoe*, No. 06-CV-5009 (BMC), 2006 WL 3408174, at *3 (E.D.N.Y. Nov. 22, 2006) (citations omitted). A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199 (2d Cir. 2010).

Here, upon a review of plaintiff's proposed TAC, there are no substantive allegations against any of these defendants other than including the names of these defendants in the caption and invoking them without context in the complaint.[8] Plaintiff does not appear to have had any interactions whatsoever with Spota, DeMarco, Myerricks, Caracappa, Kneital, Ewald, Sharkey, Geraci, Dr. John Doe, Psychiatric Director of the SCCF, Tomarken, or Legal Aid Director John/Jane Doe; indeed, as plaintiff makes clear in her reply, her inclusion of these individuals as defendants is based on a *lack* of knowledge about who was involved in causing her alleged injuries. (Reply at 9.) Most of these defendants, for example, are employees of the SCCF and the Sheriff's Office, and plaintiff states that she names them as defendant because she "was in their custody for 9 day [sic]." (*Id.*) She admits that she named the Legal Aid Director John/Jane Doe because she does not know whether that was the person speaking to Mis before one of her criminal hearings. (*Id.* at 10.)

As is readily apparent, plaintiff's TAC provides no indication that any of these defendants had any knowledge of the violations plaintiff alleges.[9] Accordingly, plaintiff has not alleged a plausible Section 1983 claim against them, and the motion to amend as to these defendants must be denied.[10]

---

[8] Plaintiff's allegation against DeVore regarding the insulting remarks plaintiff's former attorney made about him do not support a constitutional violation. Plaintiff in her briefing suggested that DeVore was present during her criminal court appearances, reviewing the SCDA files against her. (Reply at 9.) Plaintiff did not, however, allege this in the TAC, and moreover such conduct (a) does not support a claim of a constitutional deprivation, and (b) would be irrelevant due to DeVore's entitlement to absolute prosecutorial immunity, as discussed below.

[9] To the extent that plaintiff's complaint could be construed to allege a conspiracy by all of the proposed defendants to deprive her of her constitutional rights under Section 1983, such a claim would also fail under Rule 12(b)(6) (and the motion to amend therefore futile) because any allegations that plaintiff makes about a conspiracy are only vague and conclusory. *Boddie*, 105 F.2d at 862 (to withstand a motion to dismiss, the conspiracy claim must contain more than "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights"); *see Warren v. Fischi*¸ 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (plaintiff must allege some factual basis for a "meeting of the minds" or "agreement, express or tacit, to achieve the unlawful end" by defendants).

[10] The Court also notes here that the acts alleged to have been committed by proposed defendants Arianas and Gallagher—that they conducted a psychiatric evaluation of plaintiff to determine if she was competent for the purposes of her criminal case, and submitted a report declaring her mentally incapacitated—also does not support a Section 1983 claim. If the doctors' sole involvement was to examine plaintiff and write a report that resulted in Suffolk County dismissing the criminal charges against plaintiff, how that report resulted in a constitutional injury to plaintiff is unclear, even if plaintiff asserts that the tone of the examination was hostile and Arianas "deliberately, unprofessionally, negligently and with an intention to be malicious, misled and lied" about the substance of the examination in his report. Plaintiff does not clearly allege whether the judge ordered plaintiff to be arrested after the July 3, 2013 hearing because of her alleged incapacity or for some other reason, so the Court cannot discern any alleged constitutional injury to plaintiff caused by the report. Moreover, it is unclear whether or not plaintiff even actually disagrees

D. Prosecutorial Immunity

The Court now addresses defendants' argument that the motion to amend is futile with respect to the individual SCDA employee defendants (Spota, DeVore, and Assistant District Attorneys Jane Does and John Does) because they are entitled to absolute prosecutorial immunity. Plaintiff responds that immunity does not attach because these defendants "clearly acted OUTSIDE their scope of duties in initiating and pursuing plaintiff's criminal prosecution." (Reply at 10.)

Construing plaintiff's TAC liberally, plaintiff seemingly intends to plead a claim for malicious prosecution against these defendants for wrongly initiating and continuing plaintiff's prosecution, for failing to respond to her demands for production of certain documents (including the recordings or transcripts of her 911 calls), and for generally engaging in an improper and biased prosecution of her while shielding Modica and Caponi. Assuming *arguendo* that plaintiff adequately alleges malicious prosecution claims against these defendants pursuant to Section 1983, those claims are barred by absolute immunity. "It is by now well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution' 'is immune from a civil suit for damages under § 1983.'" *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 431 (1976)) (internal citation omitted); *see also Roche v. Vill. of Tarrytown*, 766 N.Y.S.2d 46, 47 (N.Y. App. Div. 2003) (state law absolute immunity). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). For example, in *Hill*, the Second Circuit held than an Assistant District Attorney's alleged acts of, inter alia, "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate." *Id.* at 661; *see also Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006) ("Plaintiff's claims against [his prosecutor], which encompass activities involving the initiation and pursuit of prosecution [including fabricating evidence used at trial, withholding exculpatory evidence, suborning perjury, and attempting to intimidate him into accepting a guilty plea], are foreclosed by absolute prosecutorial immunity, regardless of their alleged illegality."). Thus, "[i]t is well-settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under § 1983." *Ying Jing Gan*, 996 F.2d at 530 (quoting *Imbler*, 424 U.S. at 430); *see Anilao v. Spota*, 774 F. Supp. 2d 457, 476-78 (E.D.N.Y. 2011) (detailing standard). Prosecutors do not enjoy absolute immunity, however, for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Imbler*, 424 U.S. at 430-31.

Plaintiff's extensive allegations in the proposed TAC contain many general and conclusory allegations against the prosecution in her criminal case, though, as discussed above, plaintiff does not actually

---

with the report's conclusion that she was incapacitated, given that the TAC and her reply brief at some points contend that she was incapacitated between July 3, 2013 and July 11, 2013. (*See, e.g.*, TAC ¶ 21; Reply at 11.) Therefore, the motion to amend to add claims against Arianas and Gallagher is denied as well.

make particularized factual allegations in the proposed TAC against any individual SCDA employee. In any event, plaintiff's allegations do not in any way allege that any prosecutor engaged in an investigative or administrative function that would cause immunity not to attach. "Conclusory allegations that defendants went 'beyond the scope of their jurisdiction, without authority of law' are insufficient to withstand a motion to dismiss." *Bender v. City of New York*, No. 09-CV-3286 (BSJ), 2011 WL 4344203, at *7 (S.D.N.Y. Sept. 14, 2011) (citation omitted). Therefore, these defendants would be absolutely immune from a malicious prosecution claim under Section 1983, and plaintiff's motion to amend to add claims against them would be futile.

### E. Non-State Actors

The Court next turns to defendants' argument that plaintiff's motion to amend to add the Legal Aid defendants is futile because they are not state actors, and therefore cannot be liable under Section 1983. Plaintiff responds that because the Legal Aid Society is "contracted and paid by defendants" and defendant Mis, her appointed Legal Aid counsel, failed to make various motions or objections that plaintiff believes should have been made, the Legal Aid defendants were state actors. (Reply at 12.)

Since the Supreme Court's holding in *Polk Cnty. v. Dodson*, it has been well-established that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." 454 U.S. 312, 325 (1981); *see also Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."). Although a public defender could potentially act under color of state law while performing "certain administrative and possibly investigative functions," *Dodson*, 454 U.S. at 325, the allegations by plaintiff here all relate to acts the Legal Aid defendants allegedly committed while engaged in representing plaintiff in connection with her criminal case.

Therefore, it is clear that plaintiff cannot satisfy the "under color of state law" prong of *Dwyer* to state a claim under Section 1983 because none of the allegations with respect to conduct by the Legal Aid defendants constituted state action, and plaintiff's motion to amend with respect to the Legal Aid defendants must be denied.

### F. PLRA

Finally, defendants argue that the motion to amend is futile with respect to any alleged constitutional violations by the Sheriff defendants and the SCCF defendants that occurred while plaintiff was detained after the July 3, 2013 criminal court hearing, because she failed to plead that she exhausted her available administrative remedies. Although plaintiff in her reply brief admits that she did not exhaust any available administrative remedies while detained, she argues in her reply brief that her failure to exhaust should be excused because she had been deemed to be incapacitated by the judge in her criminal case, and she was held "incommunicado" without her attorney from Legal Aid or any mental health professionals visiting her. (Reply at 11; TAC ¶ 21.)

The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The

PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted). Therefore, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal*, 558 F.3d at 124 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007) and *Woodford*, 548 U.S. at 88-90).

Prior to *Woodford*, the Second Circuit:

> recognized some nuances in the exhaustion requirement: (1) administrative remedies that are ostensibly 'available' may be unavailable as a practical matter, for instance, if the inmate has already obtained a favorable result in administrative proceedings but has no means of enforcing that result or if the inmate has been deterred by intimidation; (2) similarly, if prison officials inhibit the inmate's ability to seek administrative review, that behavior may equitably estop them from raising an exhaustion defense; (3) imperfect exhaustion may be justified in special circumstances, for instance if the inmate complied with his reasonable interpretation of unclear administrative regulations, or if the inmate reasonably believed he could raise a grievance in disciplinary proceedings and gave prison officials sufficient information to investigate the grievance.

*Reynoso v. Swezey*, 238 F. App'x 660, 662 (2d Cir. 2007) (internal citations omitted); *see also Davis v. New York*, 311 F. App'x 397, 399 (2d Cir. 2009) (citing *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004)). Initially, it was unclear whether the above-discussed considerations would be impacted by *Woodford*. *See, e.g.*, *Reynoso*, 238 F. App'x at 662 ("Because we agree with the district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to decide whether *Woodford* has bearing on them."); *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("We need not determine what effect *Woodford* has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre-*Woodford* case law."). However, the Second Circuit has continued to hold post-*Woodford* that an inmate's failure to comply with the exhaustion requirement may be excused on these grounds. *See Messa*, 652 F.3d at 309 (citing the *Hemphill* factors).

Furthermore, if a plaintiff was mentally incapacitated during his or her incarceration, "this may excuse [her] failure to exhaust." *Morrison v. Stroman*, No. 12-CV-00542AM, 2014 WL 6685510, at *6 (W.D.N.Y. Nov. 26, 2014) (citing *Bonilla v. Janovick*, No. 01-CV-3988 (SJF)(ETB), 2005 WL 61505, at *2 (E.D.N.Y. Jan. 7, 2005)).

At this early juncture in the litigation, the Court cannot conclude that plaintiff could not demonstrate a "special circumstance" under which imperfect exhaustion of administrative remedies was justified based on her alleged incapacity. Therefore, the Court disagrees

11

with defendants that plaintiff's failure to exhaust renders her motion to amend futile, though this argument may be re-raised by defendants at the summary judgment stage when the factual record is more developed.

IV. CONCLUSION

In sum, plaintiff's motion to amend her complaint is granted to the extent that plaintiff may (a) assert claims against Dr. John Doe, Psychiatric Director of the SCCF, Medical and Nursing Staff John and Jane Does, EMTs John and Jane Does, Sergeant 182, and Commanding Officers John and Jane Does for false arrest and the denial of medical care while detained at the SCCF between July 3, 2013 and July 11, 2013; and (b) supplement her claim for constitutional violations occurring on or about March 19, 2011 with the names of previously unknown individuals at the SCPD Fourth Precinct (Lena Mercer, PDA #125/400, Jane Doe, PDA #145, Jane Doe, PDA, Desk Sergeant Veronko and Desk Sergeant Doe). Plaintiff's motion is denied in all other respects as futile because plaintiff fails to allege each proposed defendant's personal involvement in any constitutional injuries, the proposed defendant is immune or unable to be sued, and/or the proposed defendant is not a state actor. Plaintiff is ordered to file and serve her amended complaint, deleting those defendants against whom the Court has ruled plaintiff cannot state a valid claim. The amended complaint shall be filed and served within thirty days of this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 20, 2015
Central Islip, NY

\*\*\*

Plaintiff proceeds *pro se*. Defendants are represented by Jessica M. Spencer and Richard T. Dunne of the Suffolk County Department of Law - County Attorney, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, NY 11788.